## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIO LAMBOY RUIZ,<br>7 Old Saybrook Drive,<br>Greensboro, NC 27455<br><br>      Plaintiff,<br><br>v.<br><br>MILLENNIUM SQUARE RESIDENTIAL<br>ASSOCIATION,<br>1111 23rd Street, N.W.<br>Washington, DC 20037<br>   Serve: Corporation Service Company<br>          1090 Vermont Avenue<br>          Washington, DC 20005<br><br>and<br><br>MILLENNIUM SQUARE UNIT OWNERS<br>ASSOCIATION,<br>1111 23rd Street, N.W.<br>Washington, DC 20037<br>   Serve: Corporation Service Company<br>          1090 Vermont Avenue<br>          Washington, DC 20005<br><br>    Defendants. | Civil Action No. _____ |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Dr. Julio Lamboy Ruiz ("Plaintiff"), by and through his undersigned counsel, and respectfully files this Complaint against Millennium Square Residential Association and Millennium Square Unit Owners Association (collectively, the "Defendants") and aver as follows:

## PARTIES

1. Plaintiff, a natural person is a citizen and resident of Guilford County, North Carolina. In addition, he is the owner of a condominium unit located at 1155 23rd Street, N.W., Unit

PH3L, Washington, DC (the "Unit").  The Unit is within the condominium project known commonly as "Millennium Square, a Condominium" (the "Condominium").

2.  At all times relevant herein, Plaintiff has been the owner of the Unit.

3.  The Condominium is a mixed-use condominium created and existing under the District of Columbia Condominium Act pursuant to the recordation of the Declaration of Millennium Square, a Condominium ("Declaration") and the Bylaws of Millennium Square, a Condominium ("Bylaws") with the Office of the Recorder of Deeds of the District of Columbia.

4.  Defendant Millennium Square Residential Association is a District of Columbia incorporated association of the owners of residential units in the Condominium.

5.  Defendant Millennium Square Unit Owners Association is a District of Columbia incorporated association of the unit owners owning units within the Condominium.

6.  Defendants, collectively, administer and manage the Condominium and are responsible for enforcing those portions of the Bylaws as described herein.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States. This lawsuit is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201

8.  Venue is proper in this judicial district under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims at issue in this case took place in this judicial district.

2

## FACTS COMMON TO ALL COUNTS

A.     **The Construction**

9.  Plaintiff, desiring to make certain alterations to his balconies and roof deck, retained Aggregate, LLC ("Aggregate"), a architecture and design firm within the District of Columbia to design certain alterations.

10. Aggregate drafted certain designs and plans, such designs and plans being updated and modified as the construction project progressed.

11. On December 18, 2013, Mark Freeman ("Freeman") of Aggregate forwarded certain drawings depicting various construction elements to Mike Drees ("Drees"), Defendants' facilities manager.

12. A true and accurate copy of the drawing forwarded on December 18, 2013 is attached hereto as **Exhibit 1**.

13. On January 8, 2014, Freeman inquired of Drees, "[w]ill you please send something in writing to myself and Dr. Lamboy that we may proceed with the design we gave you last month?"

14. On January 9, 2014, Drees responded to Freeman and Plaintiff and advised, "[y]es as discussed you may proceed with the design presented provided the changes are made to the retractable portion and that the design to secure the structure is done as discussed and no roof penetrations or anchors are used."

15. The reference to the "design presented" contained in the email from Drees to Freeman dated January 9, 2014 (the "January 9, 2014 Email") was in reference to the December 18, 2013 drawings.

16. A true and accurate copy of the January 9, 2014 Email, incorporating the January 8, 2014

3052799v.1

email, is attached hereto as **Exhibit 2**.

17. In responding on January 9, 2014, Drees was acting as the authorized agent of Defendants.

18. At all times relevant herein, Drees was the authorized agent of Defendants.

19. On March 26, 2014, Freeman forwarded additional drawings to Drees (the "March 26, 2014 Email").

20. A true and accurate copy of the March 26, 2014 Email, incorporating the additional drawings, is attached hereto as **Exhibit 3**.

21. The drawings submitted to Defendants, through Drees, on December 18, 2013 and March 26, 2014 depict new exterior wall lights, lattice on the balconies and a wood ceiling with recessed lighting.

22. The Defendants did not advise Plaintiff, either directly or through any agent, within forth-five (45) days of submission of the December 18, 2013 drawings that any element of the drawings was disapproved.

23. The Defendants did not advise Plaintiff, either directly or through any agent, within forth-five (45) days of submission of the March 26, 2014 drawings that any element of the drawings was disapproved.

24. On September 29, 2014 Dyah Purwati ("Purwati"), Director of Residences, inspected the Unit and the related construction.

25. At all times relevant herein, Purwati was the authorized agent of Defendants.

26. In a Unit Alteration Agreement forwarded to Plaintiff by Defendants, Purwati is specifically identified as "Agent to the REC [Residential Executive Committee]".

27. A true and accurate copy of the Unit Alteration Agreement forwarded to Plaintiff by

4

Defendants is attached hereto as **Exhibit 4**.

28. On April 6, 2015, Plaintiff advised Purwati of problems he was encountering in regard to pigeons and his solution through the use of a retractable shade system (the "April 6, 2015 Email").

29. The April 6, 2015 email provides, *inter alia*,

> I am writing this to inform everyone of the issues I am having with all of the birds. … This roller shade will prevent any bird feces and bird feathers, which cause hazards to my health, from entering my unit. … I find that this particular shade would be a great solution for others who may be having the same problems with the birds without effecting the esthetics of the building.

30. A true and accurate copy of the April 6, 2015 Email, incorporating the additional drawings, is attached hereto as **Exhibit 5**.

31. On April 8, 2015, Freeman forwarded detailed specifications and information regarding the retractable shade system to Purwati and others (the "April 8, 2015 Email").

32. A true and accurate copy of the April 8, 2015 Email, incorporating the specifications and information regarding the retractable shade system, is attached hereto as **Exhibit 6**.

33. The Defendants did not advise Plaintiff, either directly or through any agent, within forth-five (45) days of submission of the April 6, 2015 email that any element of the drawings was disapproved.

34. The Defendants did not advise Plaintiff, either directly or through any agent, within forth-five (45) days of submission of the April 8, 2015 email that any element of the drawings was disapproved.

35. While the various construction drawings, plans and specifications were amended from time to time, at no time were the descriptions of the new exterior wall lights, lattice on the balconies, wood ceiling with recessed lighting and/or the retractable shade system

5

removed from any of the requests, drawings, plans or specifications.

**B.      The Bylaws and Defendants' Response to the Construction**

36. The Bylaws govern the parties' respective rights and obligations as same relate to the

above-referenced construction.

37. The Bylaws provide, *inter alia*,

Section 11.6. <u>Additional, Alterations, Renovations or Improvements</u>.  … With
respect to those portions of the Residential Section for which the Unit Owners
Association is responsible for maintaining, (i.e. the exterior vertical walls of the
Residential building and the Individual Residential Limited Common Element
balconies and terraces), no Residential Unit owner shall make any structural
addition, alteration, renovation or improvement or paint or alter such exterior
vertical walls or balconies or terraces without the prior written consent of the
Board of Directors and the Residential Executive Committee pursuant to this
Section.  The Residential Executive Committee shall be obligated to answer any
written request by a Residential Unit owner for approval of a proposed structural
addition, alteration, renovation or improvement in such Residential Unit owner's
Unit within forty-five (45) days after such request, and failure to do so within the
stipulated time shall constitute a consent by the Residential Executive Committee
to the proposed structural addition, alteration, renovation of improvement. …

38. A true and accurate copy of the Bylaws is attached hereto as **Exhibit 7**.

39. On or about June 17, 2015, the Defendants advised Plaintiff of their objection to the

construction described *supra* as follows,

1.      Remove the shades on the balconies of your Residence and repair the Residential
building exterior walls and ceiling back to the original structural integrity.
2.      Remove new exterior wall light on the balconies of your Residence and replace
them with the original fixtures.
3.      Remove lattice on balconies and repair the Residential building exterior walls and
ceiling back to the original structural integrity.
4.      Remove the wood ceiling and recessed lighting on the balconies.  Repair the
Residential building exterior walls and ceiling back to the original structural
integrity.

40. A true and accurate copy of the June 17, 2015 Correspondence is attached hereto as

**Exhibit 8**.

41. The June 17, 2015 Correspondence further provided that the construction conditions

6

described *supra* "impact the exterior wall of the building and are not acceptable. Such existing conditions constitute a violation of Article 11, Section 11.6 of the Bylaws. As a result, REC requires that these conditions be corrected in the manner outlined above within 30 days of the date of this letter.

42. Notwithstanding Defendants' current objections, Plaintiff sought, by written request, approval for the above-described construction.

43. As more than forth-five (45) days passed with no response from Defendants, the requests of Plaintiff to construct the alterations was automatically approved pursuant to Section 11.6 of the Bylaws.

## COUNT I – DECLARATORY JUDGMENT

44. Paragraphs 1 through 43 are incorporated herein by reference.

45. The Bylaws govern the present dispute between the parties as same relate to the construction of the new exterior wall lights, lattice on the balconies, wood ceiling with recessed lighting and the retractable shade system.

46. Plaintiff provided written requests to permit the construction in regard to the new exterior wall lights, lattice on the balconies, wood ceiling with recessed lighting and the retractable shade system.

47. More than forth-five (45) days passed with no response from Defendants to the written requests of Plaintiff.

48. As more than forth-five (45) days passed with no response from Defendants, the request of Plaintiff to construct the alterations was automatically approved pursuant to Section 11.6 of the Bylaws.

49. Pursuant to Section 11.6 of the Bylaws, the request of Plaintiff to construct the alterations

7

was automatically approved due to the silence of Defendants.

50. The June 17, 2015 Correspondence is in error as the alterations described *supra* need not be removed nor does the structure need to be repaired back to the original condition.

51. The alterations described *supra* may remain in place as constructed.

52. Plaintiff expended sums well in excess of $75,000.00 to design and construct the alterations described herein.

53. In the even that Plaintiff is obligated to remove the new exterior wall lights, lattice on the balconies, wood ceiling with recessed lighting and the retractable shade system and restore the original structural integrity as demanded by Defendants, Plaintiff will incur costs in excess of $75,000.00

WHEREFORE, Dr. Julio Lamboy Ruiz respectfully prays that judgment be entered in his favor in the form of a declaratory judgment declaring that the construction performed by Plaintiff in regard to the new exterior wall lights, lattice on the balconies, wood ceiling with recessed lighting and the retractable shade system does not violate the Bylaws and may remain in place as constructed together with an award of the costs and attorney's fees incurred in this action, pursuant to Section 17.2 of the Bylaws and any further relief deemed just and proper by this Court.

Respectfully submitted,
JACKSON & CAMPBELL, P.C.


*/s/ Christopher A. Glaser, Esq.*
Christopher A. Glaser (DC Bar # 463583)
1120 20th Street, N.W., South Tower
Washington, DC 20036
Telephone: (202) 457-1600
Facsimile: (202) 457-1678
Email: cglaser@jackscamp.com

## VERIFICATION

I hereby certify that the facts stated in the above complaint are true and correct to the best of my knowledge, information and belief.

Dr. Julie Camboy Ruiz
Plaintiff

Subscribed and sworn before me this _29th_ day of June, 2015.

SANDRA DAWES
Notary Public
Randolph Co., North Carolina
My Commission Expires Nov. 15, 2019

Notary Public
My commission expires: _Nov. 15, 2019_