IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIO LAMBOY RUIZ,<br><br>   Plaintiff,<br><br>v.<br><br>MILLENNIUM SQUARE RESIDENTIAL ASSOCIATION, et al.<br><br>   Defendants. | Civil Action No. 15-1014 JDB |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
MOTION TO COMPEL ARBITRATION**

COMES NOW Plaintiff Dr. Julio Lamboy Ruiz ("Plaintiff"), by and through his undersigned counsel, and respectfully presents this Supplemental Memorandum in Opposition to the Motion to Compel Arbitration filed in this action by Defendants Millennium Square Residential Association and Millennium Square Unit Owners Association (collectively, the "Defendants") pursuant to the Order entered October 19, 2015 and states as follows:

   **1.   Unconscionability and the Criteria Discussed in Cole v. Burns International Security Services**

Strictly applied, Cole v. Burns International Security Services, 105 F.3d 1465 (D.C.Cir. 1997) does not extend to non-statutory state law claims. See, Brown v. Wheat First Securities, Inc., 257 F.3d 821 (D.C. Cir 2001). However, that is *not* to say that Cole has no application in the present action seeking a declaratory judgment as to the parties' state law rights. See, e.g. Arreguin v. Global Equity Lending, Inc., 2008 WL 4104340, * 6 (N.D. Cal. 2008)(Noting that, "[i]n addition to the Cole factors" other state-law defenses may invalidate an arbitration agreement.) Indeed, the Cole factors can be examined to determine whether, *vel non*, there exists unconscionability as well as the degree and egregiousness of the unconscionability.

This Court can, in applying District of Columbia law, void an arbitration provision "on the grounds that it is unconscionable if the party seeking to avoid the contract proves that the contract was both procedurally and substantively unconscionable." Fox v. Computer World Services Corp., 920 F.Supp.2d 90, 97 (D.D.C. 2013). "A contract is procedurally unconscionable where a party lacked meaningful choice as to whether to enter the agreement." Fox, 920 F.Supp.2d at 97. "A contract is substantively unconscionable if the contract terms are unreasonably favorable to one party." Fox, 920 F.Supp.2d at 98.

A "finding that a contract is one of adhesion is sufficient to establish procedural unconscionablility and continue the inquiry to substantive unconscionability." Mould v. NJG Food Service, Inc., 986 F.Supp.2d 674, 978 (D.Md. 2013). "A contract of adhesion is an agreement that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms."[1] Mould, 986 F.Supp.2d at 678. As the District of Columbia Court of Appeals has recognized, "all too often, arbitration agreements are included in the language of contracts of adhesion, which consumers must sign in order to make particular purchases." Andrew v. American Import Center, 110 A.3d 626, 635 (D.C. 2015); Moore v. Waller, 930 A.2d 176, 182 (D.C. 2007) (to prove that a contract is an adhesion contract, the party challenging the contract must demonstrate that "the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation and that the services could not be obtained elsewhere.") The "use of a standardized

---

[1] Condominium bylaws are a set of rules "providing for the self-government of the condominium by an association of all the unit owners" which cannot be renegotiated with each new unit owner but are, instead, recorded among the land records and run with the land. D.C.Code § 42-1903.01; Jahanbein v. The Ndidi Condominium Unit Owners Ass'n, Inc., 85 A.3d 824, 827 (D.C. 2014).

2

form contract is a fact substantially bearing on the question of procedural unconscionability." Andrew, 110 A.3d at 638.

Here, there can be no dispute that the Bylaws of Millennium Square, a Condominium (the "Bylaws") are a contract of adhesion. The Bylaws are recorded in the land records of the District of Columbia against 162 residential units and assorted commercial units comprising the eleven story project. The Bylaws are not negotiated by each prospective owner prior to purchase but are presented in a "take-it-or-leave-it" fashion. The Bylaws are a contract of adhesion and, as such, are procedurally unconscionable.

Substantive unconscionability has been found where an agreement to arbitrate provides for "no mechanism for selecting a neutral arbitrator and it states no rules by which the arbitration will proceed." Caire v. Conifer Value Based Care, LLC, 982 F.Supp.2d 582, 595-96 (D.Md. 2013); See Ragliani v. Ripkin Professional Baseball, 939 F.Supp.2d 517, 524 (D.Md 2013) (Declaring arbitration agreement unenforceable as "[f]irst, and most egregiously, the [contract's] arbitration provision states that [defendant] will have exclusive control over the list of arbitrators that may be utilized. It has now long been established in this circuit that an employer may not provid[e] itself with the exclusive right to select the list of potential arbitrators from which the ultimate decisionmaker will be selected.)

Section 19.2 is substantively unconscionable in that it fails to provide for a neutral arbitrator—see, Memorandum in Opposition to Motion to Compel Arbitration citing, Hooters of America, Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999); Murray v. United Food and Commercial Workers International Union, 289 F.3d 297 (4th Cir. 2002); Harold Allen's Mobile Home Factory Outlet, Inc., 825 So. 779 (Ala. 2002)—fails to provide any rules of arbitration or provide for any meaningful discovery and fails to require that a written award be provided to the
3

3139072v.1

parties upon conclusion of the arbitration. Indeed, other than the fee-shifting provision within Section 19.2, there exists little that is not substantively unconscionable.  It is difficult to conceive of a more egregious case in which the more dominant party seeks to compel arbitration using only an arbitrator selected by it and without any governing rules.

Section 19.2 is both procedurally and substantively unconscionable.  Section 19.2 must be stricken and this action should proceed in this Court.

### 2. The Application of the District of Columbia Revised Uniform Arbitration Act, D.C. Code § 16-4411 (a), and the Federal Arbitration Act § 5

It does not appear to be in dispute that the Bylaws were entered into between District of Columbia entities on the one hand and a North Carolina citizen on the other hand.[2]  This Court's jurisdiction arises from the diversity of the parties' citizenship pursuant to 28 U.S.C. § 1332.  The Bylaws are in regard to real property located wholly within the District of Columbia and, as such, do not affect interstate commerce.

The Federal Arbitration Act "is not a jurisdictional statute, bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." Foulger-Pratt Residential Contracting, LLC v Madrigal Condominiums, LLC, 779 F.Supp.2d 100, 107 fn 6 (D.D.C. 2011).  Where this Court's jurisdiction is predicated upon diversity of citizenship, the District of Columbia Revised Uniform Arbitration Act ("DCRAA") governs the parties' dispute.[3] Foulger-Pratt Residential Contracting, LLC, 779 F.Supp.2d at 108 (the Federal Arbitration Act "does not

---

[2]  More correctly, the Bylaws were executed September 21, 2000, recorded on September 27, 2000 in the Land Records of the District of Columbia and provided with Instrument Number 89233.  Plaintiff acquired his property by deed dated August 20, 2013, recorded on September 13, 2013 in the Land Records of the District of Columbia and provided with Instrument Number 2013107072.  The Bylaws were entered into by each of the various unit owners—both residential and commercial—upon their respective acquisition of their properties.

[3]  Plaintiff asserts that neither the DCRAA nor the Federal Arbitration Act govern this dispute as the arbitration provision of Section 19.2 of the Bylaws is unenforceable as unconscionable.

preempt state arbitration laws if freely chosen by the parties."); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 199, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (The Federal Arbitration Act applies to those contracts affecting interstate commerce); Bryson v. Gere, 268 F.Supp.2d 46, 50 (D.D.C. 2003) (Diversity actions fall within FAA only "as long as the arbitration agreement involves or affects interstate commerce.")

Pursuant to the DCRAA, an arbitration agreement "is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." D.C. Code § 16-4406 (a). The DCRAA further provides, similar to, 9 U.S.C. § 5,

> If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method shall be followed, unless the method fails. If the parties have not agreed on a method, the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, on motion of a party to the arbitration proceeding, shall appoint the arbitrator. An arbitrator so appointed has all the powers of an arbitrator designated in the agreement to arbitrate or appointed pursuant to the agreed method.

D.C. Code § 16-4411 (a).

While D.C. Code § 16-4411 (a), and not 9 U.S.C. § 5, is applicable the difference is not substantive. Therefore, reference to the case law interpreting 9 U.S.C. § 5 is appropriate.

The majority of the Courts examining 9 U.S.C. § 5 under circumstances in which a named arbitrator or class of arbitrators cannot serve have applied an "integral-versus-ancillary" test. Riley v. Extendicare Health Facilities, Inc., 345 Wis.2d 804, 817 (2012)("As evidenced by the multitude of cases referenced, the integral-versus-ancillary inquiry is the generally accepted method for analyzing section 5's application.").

> Under the integral-versus-ancillary test, a court must decline to appoint a substitute arbitrator if the parties' choice of arbitrator is 'so central to the arbitration agreement that the unavailability of that arbitrator brings the agreement to an end.' Conversely, if the choice of arbitrator is a mere ancillary logistical concern, then the court should appoint a substitute arbitrator pursuant to section 5 or, in this case, [the parallel state provision].

5

Riley, 345 Wis.2d at 817. "When the parties have named an exclusive arbitration provider, some courts have concluded that such a selection was integral to the agreement" and have refused to appoint a substitute arbitrator. Riley, 345 Wis.2d at 818; see Jackson v. Payday Financial, LLC, 764 F.3d 765, 780-814 (11th Cir. 2014), cert denied, 135 S.Ct. 1894, 191 L.Ed.2d 763; Ranzy v. Tijerina, 393 Fed.Appx. 174, 176 (5th Cir. 2010)("Section 5 does not, however, permit a district court to circumvent the parties' designation of an exclusive arbitration forum when the choice of that forum 'is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern.'"); Reddam v. KPMG, LLP, 457 F.3d 1054, 1061 (9th Cir. 2006); Stewart v. GGNSC-Canonsburg, L.P., 9 A.3d 215, 221 (Pa. Super., 2010)("this Court will not rewrite an arbitration agreement and insert additional terms to replace an unenforceable provision that was integral to the agreement.")

Those cases cited *supra*, as well as others, are in regard to the designation of the National Arbitration Forum ("NAF"), an entity which was forced to cease consumer arbitrations in July 2009. While Section 19.2 of the Bylaws does not name a specific arbitrator, it does name a class of arbitrator which must be stricken in that the neutrality of an arbitrator selected solely by Defendants is unconscionable. Regardless of the reason to strike an identified arbitrator or class of arbitrators, the fact that the arbitrator is stricken implicates D.C. Code § 16-4411 (a) and the cases cited *supra* establishe that if the arbitrator selection process is integral to Section 19.2, this Court cannot designate a substitute arbitrator.

The "parties use the term 'shall' when designating" a particular arbitrator demonstrates the parties' intent that such arbitrator is "integral to the arbitration agreement" and that the court should not appoint a substitute arbitrator. Riley, 345 Wis.2d at 825. Section 19.2(b) of the Bylaws provides, in relevant part, that arbitration "pursuant to these Bylaws shall consist of the

6

appointment of an independent arbitrator by the members of the Board of Directors who are Residential Unit owners, the appointment of a second independent arbitrator by the members of the Board of Directors who are Commercial Unit owners and the appointment of the third arbitrator by the two previously appointed arbitrators." (Emphasis added). As in Riley and the cases cited *supra*, the selection of an arbitrator chosen exclusively by Defendants is integral to Section 19.2. The parties choice of the term "shall" demonstrates their intent to limit the arbitrator not to a true neutral but to one chosen exclusively by Defendants. D.C. Code § 16-4411 (a) and 9 U.S.C. § 5 are inapplicable.

### 3. Severing Portions of Section 19.2 Will Not Result in an Enforceable Arbitration Provision

An arbitration provision in an agreement is severable from the remainder of the contract. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Sapiro v. VeriSign, 310 F.Supp.2d 208 (D.D.C. 2004)(applying a severability provision in arbitration agreement to sever potentially insufficient discovery provision).

Severing offensive portions of the arbitration section here would not cure the fatal defects. Indeed, removal of the unconscionable arbitrator selection provision alone would continue to leave Section 19.2 wanting. The Bylaws fail to provide for any rules of arbitration. The Bylaws fail to provide for discovery but instead dictate a severely abbreviated schedule of 30 days in which no effective discovery can be had. The Bylaws fail to require a written award. In order for these provisions to be included within the Bylaws, this Court would have to rewrite the parties' agreement into something they had not agreed. See, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); Fox v. Computer World Services Corp., 920 F.Supp.2d 90, 97 (2013) ("since arbitration is a matter of contract, parties cannot be compelled to arbitrate their disputes unless they have agreed to do so."); Booker v.

3139072v.1

Robert Half Intern., Inc., 413 F.3d 77, 84-85 (D.C. Cir. 2005) ("If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties.")(citations omitted).

In Booker, the parties had agreed to arbitrate their dispute "pursuant to the commercial arbitration rules of the American Arbitration Association" and their agreement provided that "punitive damages may not be awarded in an arbitration proceeding …" Booker, 315 F.Supp.2d 94, 96 (D.D.C. 2004). This Court, "guided by the well-established principle that the parties' intent, particularly as set forth in an unambiguous contract term, should be given effect," held that the punitive damages provision was unlawful but could nevertheless be severed from the contract. Booker, 315 F.Supp.2d at 106. On appeal, the Circuit Court affirmed the decision and noted that "[n]ot only does the agreement contain a severability clause, but Booker identifies only one discrete illegal provision in the agreement." Booker, 413 F.3d 77, 85 (D.C.Cir. 2005).

Contrary to Booker, there exists no severability clause in the Bylaws. The Bylaws, which are intended to create a self-governance body for the entire condominium and its members, fails to provide for any severability but it presented as a "take-it-or-leave-it" proposition. Moreover, and contrary to *Booker*, Plaintiff here is not complaining of a "discrete illegal provision in the agreement." Instead, the failure to incorporate any rules, the failure to provide for a neutral arbitrator, the failure to provide for any discovery and the failure to mandate that a written decision be provided are all independent bases by which the arbitration provision fails.

Furthermore, while the Booker arbitration provision—which expressly incorporated the AAA rules—was capable of standing after the severance of the illegal provision, the present Section 19.2 cannot. Removing the offensive provisions which pervade the arbitration

8

agreement presently at issue would result in a disintegrated fragment of an agreement and would be more akin to this Court rewriting the parties' contract which would not reflect the intent of the parties.[4] The <u>Booker</u> Court was not called upon to re-write the parties' agreement by inserting new terms and this Court should not do so here.

WHEREFORE, Dr. Julio Lamboy Ruiz respectfully requests this Court deny the Motion to Compel Arbitration and that this action be permitted to proceed in this Court together with any further relief deemed just and proper by this Court.

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

*/s/ Christopher A. Glaser, Esq.*
Christopher A. Glaser (DC Bar # 463583)
1120 20th Street, N.W., South Tower
Washington, DC 20036
Telephone: (202) 457-1600
Facsimile: (202) 457-1678
Email: cglaser@jackscamp.com

---

[4] Potentially more troubling is that the Bylaws here would be re-written by this Court without inclusion of all parties to them. Indeed, the rights of the other residential unit owners and commercial unit owners would be impacted should this Court re-write the Bylaws to both sever the illegal provision as well as add newly-created provisions, each of the other residents— commercial and residential.

9

3139072v.1

# CERTIFICATE OF SERVICE

I hereby certify that on the 12${}^{th}$ day of November, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which caused service to the following:

John D. Sadler, Esq.
Shelah F. Lynn, Esq.
Ballard Spahr, LLP
1909 K Street, N.W.
12${}^{th}$ Floor
Washington, DC  20006


    */s/ Christopher A. Glaser*
    Christopher A. Glaser, Esq.